UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

PETER T. GILLO,

        Plaintiff,

    v.                                  Case No.: 2:14-CV-99-JVB-JEM

GARY COMMUNITY SCHOOL
CORPORATION, *et al.*

        Defendants.

**OPINION AND ORDER**

    Peter Gillo sued Gary Community School Corporation ("School"), Gary Teachers Union Local No. 4 ("Union"), and several individuals associated with these entities. He alleges that Defendants discriminated and retaliated against him due to his disability. The School, Union, and associated individuals moved for summary judgment.

**A.**    **Facts**

**(1)**    *Overview*

    The Court views the following facts in the light most favorable to Plaintiff, the non-moving party.

    Plaintiff is deaf. (Compl., DE 1, ¶ 11.)

    Defendant Gary Community School Corporation is an Indiana public school entity. (School Defs.' Answer to Compl., DE 72, ¶ 14.) It employed Plaintiff as a teacher of deaf and hard-of-hearing students from 2003 through the end of the school year in 2013. (Compl., DE 1, ¶ 13.) Defendant Gary Teachers Union Local No. 4 is a labor union organization. (*Id.* at ¶ 23.) A

collective bargaining agreement covered Plaintiff from January 1, 2011, through the end of his employment. (Decl. Zimmerman, DE 167-1, ¶ 8.)

During the decade of Plaintiff's employment, Defendant School suffered declines in enrollment and revenue. (*Id.* ¶ 1.)

Plaintiff claims he and his class of deaf and hard-of-hearing students remained in a classroom during a fire drill in 2007 due to the lack of visible fire alarms. (Compl., DE 1, ¶ 41.) Plaintiff claims he complained about the lack of visible fire alarms, and this led to retaliation against him. (*Id.* at ¶¶ 41–53.)

Plaintiff claims Defendants discriminated against him because of his disability, denied him reasonable accommodations, and retaliated against him for requesting reasonable accommodations. Plaintiff claims Defendant School terminated him twice.


**(2)**   *2011: first termination, and first EEOC charge*

Plaintiff claims that on May 5, 2011, he received a note from Defendant Edmund Fraire, director of special education at the School, informing Plaintiff of the elimination of his position as of June 3, 2011, "because neither of the administrators at Glen Park Academy nor Lew Wallace Hearing Impaired Programs want to be bothered with your various demands for accommodations of your deafness." (Mem. from Fraire to Gillo, DE 60 at 139.) Defendant Fraire denied writing this memorandum. (Mem. from Fraire to Cook, DE 166-3.)

In May 2011, the School cancelled Plaintiff's contract, effective at the end of the 2010-11 school year. (Compl., DE 1, ¶ 68.)

On August 25, 2011, Plaintiff filed EEOC Charge Number 846-2011-67632 ("first charge") against the School, alleging discrimination from May 5, 2011, through June 3, 2011.

(School Defs.' Mem. Supp. Mot. Summ. J., DE 166 at 2.) In this EEOC Charge, Plaintiff claimed that on numerous occasions he asked for an interpreter, flashing fire alarms, and a visual telephone, but the School denied these accommodations. (Discrimination Charge, DE 60 at 130.) Plaintiff also alleged, on the basis of Defendant Fraire's purported statement, that the School terminated him because School administrators did not want to be bothered with his requests for accommodations. (*Id.*) Plaintiff claimed the School discriminated against him because of his disability, retaliated against him for requesting reasonable accommodations, and discriminated against him because of his age and sex. (*Id.*)

In September 2011, however, the School called Plaintiff back to teach for the 2011-12 school year. (Letter from Campbell to Gillo, DE 166-6.)

On June 18, 2012, the EEOC issued its determination regarding the first charge. (Determination, DE 173 at 44–45.) The EEOC determined that the evidence indicated the School had not provided Plaintiff with reasonable accommodations for his disability, and that there was evidence that Gillo's requests for reasonable accommodations formed part of the motive for his termination. (*Id.* at 44.) The EEOC found reasonable cause to believe Plaintiff was discriminated against on the basis of his disability, and retaliated against for requesting reasonable accommodations, all in violation of the Americans with Disabilities Act. (*Id.*) Conciliation efforts began. (*Id.* at 45.)

**(3)** *2012 through 2013: second termination, and second EEOC charge*

For the 2012-13 school year, the School employed three teachers for deaf and hard-of-hearing students: Plaintiff and two others. (Decl. Zimmerman, DE 167-1, ¶ 10.) The School had hired the two others years before hiring Plaintiff. (*Id.*) Plaintiff, however, claims he has seniority

among the relevant group of teachers. (Pl.'s Mem. Supp. Resp. School Defs.' Mot. Summ. J., DE 176 at 3.)

Plaintiff claims that during the 2012-13 school year, Defendant School conspired with Defendant Union against Plaintiff, denying him access to union membership benefits and sign language interpreter services, subjecting him to harassment and retaliation, and ultimately terminating him after the 2012-13 school year. (Compl., DE 1, ¶ 1.) Plaintiff claims the School assigned a hearing teacher with an inferior license to fill Plaintiff's absence. (*Id.*) Defendants dispute these claims.

Defendant School claims it terminated Plaintiff's employment because of a decline in student population, multiple school closures, and a "severe financial crisis" which required a reduction in force. (School Defs.' Mem. Supp. Mot. Summ. J., DE 166 at 3.)

At the end of the 2012-13 school year, the School notified 102 teachers (including Plaintiff) that the School would not renew their contracts, pursuant to a reduction in force. (Union Defs.' Mem. Supp. Mot. Summ. J., DE 165 at 3; Decl. Zimmerman, DE 167-1, ¶ 11.) The collective bargaining agreement provided that teachers would be laid off in these circumstances on the basis of least seniority. (Union Defs.' Mem. Supp. Mot. Summ. J., DE 165 at 3.) Defendants claim that at the end of the 2012-13 school year, Plaintiff had the least seniority of the three individuals employed by the School to teach deaf and hard-of-hearing students. (*Id.*)

All teachers facing cancellation of their contracts had the opportunity to attend a meeting with the School superintendent. (Decl. Zimmerman, DE 167-1, ¶ 11.) Plaintiff attended this meeting, with union representatives and an interpreter. (*Id.*) Plaintiff claims his case was "comingled" with those of the "hearing teachers," and was not mentioned specifically at the meeting. (Compl., DE 1, ¶ 111.)

On July 23, 2013, the School cancelled Plaintiff's contract. (*Id.* ¶ 114.)

On August 9, 2013, Plaintiff filed another EEOC charge against the School: Number 470-2013-02972. (Discrimination Charge, DE 60 at 14.) Plaintiff claimed the School denied him reasonable accommodations, harassed him, and discharged him because of his disability, and in retaliation for filing an EEOC charge, in violation of the ADA, as amended. (*Id.*)

On December 13, 2013, Plaintiff left the United States on a trip to Uganda. (Pl.'s Resp. School Defs.' Trial Br., DE 128 at 1.) Three days later, on December 16, 2013, the U.S. Department of Justice sent Plaintiff a "Notice of Right to Sue" letter regarding Charge Number 846-2011-67632. (Notice Right Sue, DE 166-4.)

**(4)**   ***2014***

On January 10, 2014, Plaintiff returned to Gary, and found U.S. postal notices. (Pl.'s Resp. School Defs.' Trial Br., DE 128 at 2.) After some inquiry, the DOJ resent the "Notice of Right to Sue" letter regarding Charge Number 846-2011-67632 to Plaintiff on January 14, 2014. (Resent Notice Right Sue, DE 60 at 128–29.) This version of the letter noted that the new applicable date was the date of the resent letter, and noted that Plaintiff had 90 days from receipt of the resent letter to file suit. (*Id.*) Plaintiff received this resent letter on January 16, 2014. (Decl. Gillo, DE 174, ¶ 29.)

Plaintiff filed this suit on April 1, 2014. (Compl., DE 1.) The EEOC issued a right-to-sue notice for the 2013 EEOC charge on April 29, 2014, which Plaintiff received on May 5, 2014. (Decl. Gillo, DE 174, ¶ 30.)

On July 1, 2014, Plaintiff retired from the School. (School Defs.' Mem. Supp. Mot. Summ. J., DE 166 at 3.)

On August 1, 2014, Plaintiff filed in this case the right-to-sue notice for the 2013 EEOC

charge. (Dismissal and Notice Rights, DE 60 at 7.)

On October 20, 2014, Plaintiff withdrew his application for retirement from the School.

(Mem. Supp. Pl.'s Resp. School Defs.' Mot. Summ. J., DE 176 at 8.)


**B.      Pending claims and procedural posture**

In his complaint, Plaintiff brought the following claims against all Defendants:

(1)      Count 1: "VIOLATION OF 42 U.S.C. § 1983: (DUE PROCESS AND EQUAL
         PROTECTION CLAUSES)"

(2)      Count 2: "VIOLATION OF 42 U.S.C. § 1983, VIOLATION OF 42 U.S.C. §
         12112(a) (DISCRIMINATION BASED ON DISABILITY: ADA 1990, AS
         AMMENDED, AMMENDMENT ACTS OF 2008)"

(3)      Count 3: "VIOLATION OF 42 U.S.C. § 1983 (WHISTLE BLOWER
         RETALIATION)"

(4)      Count 4: "VIOLATION 42 U.S.C. § 1983: EQUAL PROTECTION CLAUSES
         {VISIBLE FLASHING FIRE SAFET[Y] VIOLATION, 24 C.F.R. § 100.203
         AND 24 C.F.R. § 100.204(a)}"

(5)      Count 5: "VIOLATION OF 42 U.S.C. § 1985(3): CONSPIRACY TO
         INTERFER[E] WITH CIVIL [RIGHTS]"

(6)      Count 6: "COMMON LAW CONSPIRACY" and

(7)      Count 7: "I.C. § 34-15-1 (DEFAMATORY LIBEL, TRADUCE AND
         CALUMNY)."

The Court dismissed the defamation claim against the School Defendants because

Plaintiff failed to file a timely tort claims notice. (Order, DE 84 at 3.)

The Court dismissed all claims against Defendants Deaf Service, Inc., Pampalone, and

Duncan, pursuant to a joint stipulation. (Order, DE 114.)

The remaining Defendants consist of two groups:

(1)      The School Defendants: the School, Pruitt, Cook, Fidishin, Fraire, Boarden, Greene, Craig, and Wright; and

(2)      The Union Defendants: the Union, Zimmerman, Craig (claimed by both groups in their motions for summary judgment), Gardner-Johnson and Headen.

Both groups of Defendants moved separately for summary judgment. The School Defendants also moved to strike three affidavits submitted by Plaintiff. (School Defs.' Mot. Strike, DE 199.) The Court will address the motion to strike first.


**C.      School Defendants' motion to strike**

The School Defendants argue that the affidavits of Walton, Jr., Buterbaugh, and Powell—submitted by Plaintiff—fail to comply with Federal Rule of Civil Procedure 56(c)(4) because they do not state they are based on the personal knowledge of the affiants, they contain inadmissible hearsay regarding what other people said and did, and they reference dates beyond those listed in an EEOC charge.

However, although Rule 56(c)(4) requires affidavits used to oppose a motion for summary judgment to "be made on personal knowledge," the Rule does not require affidavits to *state* they are based on the personal knowledge of the affiants.

As for the hearsay objections, they are vague and overly broad. The School Defendants fail to point to any specific instances of hearsay.

Regarding the objections involving dates, the School Defendants fail to acknowledge the existence of two EEOC charges, and fail to acknowledge that references to dates beyond those listed in an EEOC charge could be relevant and admissible to Plaintiff's non-ADA claims, and

could even be relevant to Plaintiff's ADA claims if the scope of the EEOC charge included dates beyond those specifically referenced in the EEOC charge.

Accordingly, the Court DENIES the School Defendants' motion to strike (DE 199) and turns to the motions for summary judgment.

**D.      Summary judgment standard**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**E.      Discussion: overview**

The Court notes at the outset that a person cannot violate 42 U.S.C. § 1983. Counts 1 through 4 of Plaintiff's complaint purport to state claims for violations of this statute. But § 1983 "does not create substantive rights" susceptible to violations. *Levin v. Madigan*, 692 F.3d 607, 611 (7th Cir. 2012). Rather, § 1983 serves as "a means for vindicating federal rights conferred elsewhere." *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997). For the purpose of ruling on the motions for summary judgment, the Court will look behind Plaintiff's erroneous language in this regard.

In a nutshell, Plaintiff alleges as follows:

- Count 1: Defendants did not renew his contract in 2013, in violation of the due process clause;

- Count 2: Defendants violated his rights under the Americans with Disabilities Act and the Americans with Disabilities Act Amendments Act by harassing and abusing him, denying him reasonable accommodations, and discharging him without due process;

- Count 3: Defendants retaliated against him for reporting violations of safety regulations concerning the lack of visible fire alarms;

- Count 4: Defendants violated regulations regarding flashing fire alarms and ignored his requests for the installation of such alarms or for transfer to buildings containing such alarms;

- Counts 5 and 6: Defendants conspired to interfere with his civil rights, in violation of 42 U.S.C. § 1985(3), and in violation of Indiana common law; and

- Count 7: Defendants defamed him. As noted above, the Court dismissed this Count as to the School Defendants. (Order, DE 84 at 3.)

9

The gravamen of Counts 1 through 7 is that Defendants discriminated against Plaintiff because of his disability, failed to provide reasonable accommodations, retaliated against him in connection with his disability and his reports and requests regarding his disability, and defamed him. (Compl., DE 1.) Plaintiff alleges this discrimination and retaliation took the form of harassment, abuse, and, on two occasions, termination of employment. (*Id.*)

## F.       Count 1—equal protection and due process

**(1)       *Equal protection claim against all Defendants***

The Court addresses the equal protection facet of Count 1 first, as it is easily dismissed. Despite its heading—"VIOLATION OF 42 U.S.C. § 1983: (DUE PROCESS AND EQUAL PROTECTION CLAUSES)"—Count 1 does not develop any equal protection claim, but instead focuses on a due process claim. Nor does Plaintiff adequately develop arguments for the purported Count 1 equal protection clause violation in his summary judgment briefs.

A claim is deemed abandoned when plaintiff fails to delineate it in his brief in opposition to summary judgment. *Palmer v. Marion Cnty.*, 327 F.3d 588, 597–98 (7th Cir. 2003). The non-moving party "waives any arguments that were not raised in its response to the moving party's motion for summary judgment." *Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014). "Arguments not developed in any meaningful way are waived." *Cent. States, Se. & Sw. Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 808 (7th Cir. 1999). So, to the extent Count 1 purports to bring an equal protection claim, the Court dismisses that claim against all Defendants.

**(2)**   *Due process claim against all Defendants*

This leaves the Count 1 procedural due process claim.

To prevail on a procedural due process claim, Plaintiff must establish that a state actor deprived him of a constitutionally protected property interest without due process of law. *Hinkle v. White*, 793 F.3d 764, 767 (7th Cir. 2015.) The United States Constitution does not create property interests; "[r]ather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Moore v. Muncie Police and Fire Merit Com'n*, 312 F.3d 322, 326 (7th Cir. 2002).

In the context of a fired public employee bringing a due process claim against his employer, the Seventh Circuit has stated that "[a] property interest in continued employment 'can be created in one of two ways, 1) by an independent source such as state law securing certain benefits; or 2) by a clearly implied promise of continued employment.'" *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010) (quoting *Phelan v. City of Chi.*, 347 F.3d 679, 681 (7th Cir. 2003)). Plaintiff bears the burden of proving he had a constitutionally protected property interest in his employment as a public school teacher. *Krieg v. Seybold*, 481 F.3d 512, 519 (7th Cir. 2007.) Plaintiff must show he had a "legitimate claim of entitlement" to the position and not just an "abstract need, desire or unilateral expectation." *Munson v. Friske*, 754 F.2d 683, 692 (7th Cir. 1985).

But Plaintiff has not shown that Defendants deprived him of a constitutionally protected property interest. He claims he was a tenured teacher, but shortly before the termination in July 2013 about which Plaintiff complains in Count 1, the School gave Plaintiff only a "reasonable

assurance" of continuing employment to teach the following school year. (Compl., DE 1, ¶ 108.) The School did not promise or guarantee that Plaintiff would teach the following year.

In short, Plaintiff points to no independent source such as state law which secured his employment in this situation, and Plaintiff points to no clearly implied promise to him of continued employment. Plaintiff therefore has not shown he had a constitutionally protected property interest in his expectation of continued employment.

Indeed, the School emphasized the argument that Plaintiff lacks a constitutionally protected property interest in continued employment. (School Defs.' Mem. Supp. Mot. Summ. J., DE 166 at 11.) But Plaintiff failed to respond, so he abandoned his claim. *See Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church*, 733 F.3d 722, 729 (7th Cir. 2013).

Even if Plaintiff had demonstrated the deprivation of a constitutionally protected property interest, his due process claim still must fail. Plaintiff rests his due process claim on Defendant's alleged failure to follow the Indiana Code during the termination process. But the due process clause does not necessarily entitle Plaintiff to any particular process established by the Indiana Code. The Fourteenth Amendment does not enforce compliance with state procedures. *Scott v. Village of Kewaskum*, 786 F.2d 338, 342 (7th Cir. 1986).

The due process clause requires a pre-termination hearing before a state actor may deprive a person of a constitutionally protected property interest in public employment. *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 542 (1985). The pre-termination hearing for a public school employee need not be elaborate. *Id.* at 545. The essential requirements are merely notice and an opportunity to respond, orally or in writing. *Id.* at 546.

Here, Plaintiff admits he received notice and an opportunity to be heard regarding the termination in July 2013. (Compl., DE 1, ¶¶ 109–11; Letter from Boarden, School, to Gillo, DE 60 at 103). Therefore, even if Defendants deprived Plaintiff of a constitutionally protected property interest, Plaintiff has not adumbrated any evidence showing they did so without providing the process due under the Constitution.

As there is no genuine issue of material fact as to Count 1, and Defendants are entitled to judgment as a matter of law, the Court dismisses Count 1 against all Defendants. The Court also notes the presence of alternative grounds to dismiss Count 1, but need not address them.

### G.    Counts 2 and 3—ADA claims

### (1)    *Overview of ADA claims*

In Count 2, Plaintiff claims the Defendants discriminated and retaliated against him, and denied him reasonable accommodations, in violation of the Americans with Disabilities Act and the Americans with Disabilities Act Amendments Act. (Compl., DE 1, Count 2.) Specifically, Plaintiff claims that because of his disability, and in retaliation for requesting accommodation, Defendants harassed and abused him, denied him accommodations, and terminated his employment. (Compl., DE 1, ¶ 151.)

In Count 3, Plaintiff claims Defendants retaliated against him for reporting the lack of visible fire alarms. (*Id.*, Count 3.)

The Seventh Circuit held that only Title I provides recourse for ADA employment discrimination claims; Title II—prohibiting discrimination by public entities against the disabled regarding services—does not. *Brumfield v. City of Chi.*, 735 F.3d 619, 622 (7th Cir. 2013).

13

Title I (a.k.a. Subchapter I) of the ADA prohibits employment discrimination against qualified individuals on the basis of disability:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). A plaintiff may establish a claim for ADA discrimination in one of two ways: disparate treatment or failure to accommodate. *See Basith v. Cook Cnty.*, 241 F.3d 919, 926–27 (7th Cir. 2001). A plaintiff may also pursue a claim for retaliation under the ADA. 42 U.S.C. § 12203(a).

**(2)     *ADA exhaustion requirement***

(a)     *Law*

Title I of the ADA expressly adopts the enforcement powers, remedies, and procedures of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 12117(a). Among these adopted provisions are 42 U.S.C. § 2000e-4, which created the Equal Employment Opportunity Commission and gave it various powers, and 42 U.S.C § 2000e-5, which established procedures regarding EEOC charges.

Failure to exhaust administrative remedies by filing an EEOC charge prevents a plaintiff from pursuing that claim in court:

> In order to recover for violations of Title I of the ADA, a plaintiff must file a charge of discrimination with the EEOC within 180 days of the alleged violation (if he does not file an initial charge with a state agency).

*Stewart v. Cnty. of Brown*, 86 F.3d 107, 110 (7th Cir. 1996).

14

(b)    *Dismissal of ADA claims against Union Defendants for failure to exhaust administrative remedies*

Plaintiff failed to exhaust his administrative remedies against the Union Defendants. Plaintiff filed two EEOC charges against Defendant School, but no EEOC charges against the Union Defendants.

Plaintiff does not contend he named the Union Defendants in any EEOC charge. Instead, Plaintiff argues he did not need to file a separate EEOC charge against them because they joined in a conspiracy to aid and abet the School in forcing Plaintiff out of his job.

But this misses the point, and the case Plaintiff relies on—*Dennis v. Sparks*, 449 U.S. 24, 28 (1980)—is inapposite. Whether or not the Union participated in a conspiracy with the School, Plaintiff still needed to file an EEOC charge against the Union as a prerequisite to suing it, unless an exception applies.

One potential exception to the requirement that a plaintiff name a party in an EEOC charge before suing that party is when the unnamed party "has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings. . . ." *Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 905 (7th Cir. 1981). But here, Plaintiff has not alleged—and there is no evidence—that anyone provided adequate notice of the charge to the Union Defendants, or that the Union Defendants had an opportunity to participate in conciliation proceedings. "Arguments not developed in any meaningful way are waived." *Cent. States*, 181 F.3d at 808.

Another potential exception to the exhaustion requirement is when a plaintiff can show pursuit of administrative remedies would have been futile or inadequate. *See Honig v. Doe*, 484

U.S. 305, 326–27 (1988). But here, Plaintiff has not argued that pursuit of administrative remedies against the Union Defendants would have been futile or inadequate, and so has waived this argument.

Accordingly, Plaintiff failed to exhaust his administrative remedies against the Union Defendants, and failed to establish any exception to the exhaustion requirement. As the deadline for filing an EEOC charge against the Union Defendants passed long ago, the Court grants summary judgment for the Union Defendants regarding all ADA claims.

The Court notes the existence of multiple other grounds upon which to grant summary judgment for the Union Defendants on all ADA claims in Counts 2 and 3, but need not elaborate.

**(3)**     ***Dismissal of ADA claims against individual School Defendants***

Plaintiff purports to bring Counts 2 and 3 against all Defendants, including the individuals named as Defendants in his complaint. In the "Parties" section of his complaint, Plaintiff claims each individual acted in the capacity of his position. For example, Plaintiff alleges Defendant Pruitt acted "in her capacity as Superintendent of [Gary Community School Corporation]." (Compl., DE 1, ¶ 15.) Plaintiff claims he is suing the School officials in their individual capacities as well as their official capacities. (Pl.'s Mem. Supp. Opp'n Mot. Dismiss, DE 73-1, ¶ 47.)

But individuals cannot be liable under Title I of the ADA unless they are "employers" as defined by the ADA. *EEOC v. AIC Sec. Investig., Ltd.*, 55 F.3d 1276, 1282 (7th Cir. 1995). The ADA "provides only for employer, not individual, liability" and "a supervisor cannot be held liable in his individual capacity under the ADA . . . ." *Silk v. City of Chi.*, 194 F.3d 788, 797 n.5 (7th Cir. 1999).

16

Here, the individuals named in the complaint are not "employers" under the ADA.

As the ADA does not provide for individual liability, and as any claims against the individuals in their official capacities would be redundant since Plaintiff named as Defendants the entities to which the officials belong, the Court dismisses all ADA claims against all the individuals named as Defendants.[1]

**(4)** ***Dismissal of certain ADA claims against Defendant School for lack of timeliness***

Plaintiff filed two EEOC charges against the School, on September 15, 2011, and August 9, 2013. In order to satisfy the exhaustion requirement and maintain ADA claims in this case, the ADA claims must be timely. In order for the ADA claims to be timely, Plaintiff must meet two deadlines: Plaintiff must file an EEOC charge within 180 days of the alleged violation, and Plaintiff must file a lawsuit within 90 days of receipt of the right-to-sue notice.

(a)	*Law*

Regarding the first deadline, since Plaintiff filed no relevant charges with a state agency, Plaintiff's ADA claims in this lawsuit are subject to a 180-day time-bar pursuant to 42 U.S.C. § 12117(a). *See Stewart*, 86 F.3d at 110.

Under the *Morgan* doctrine, the touchstone for determining timeliness under the 180-day requirement is to ask whether the "discrete discriminatory acts" occurred within the 180-day window before the filing of the EEOC charge. *Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S.

---

[1] For the sake of clarity, the Court notes it already dismissed Duncan and Pampalone (the individual Defendants associated with Defendant Deaf Service, Inc.) pursuant to a joint stipulation, and the Court already dismissed Counts 2 and 3 against the individual Union Defendants in section G(2)(b) of this Order.

101, 108–122 (2002). Discrete acts that fall within the statutory time period do not save acts that fall outside the statutory time period. *Id.* at 112. Discrete acts are not actionable if time barred, even if they are related to acts alleged in a timely filed EEOC charge. *Id.* at 113. The Supreme Court listed termination as an easily identifiable discrete act. *Id.* at 114.

*Morgan* precludes application of the continuing violation doctrine to save the action-ability of conduct that occurred more than 180 days before an EEOC charge, unless a plaintiff meets an exception. One exception is when a plaintiff maintains a "pattern and practice case," which requires evidence that the defendant "regularly and purposefully discriminates" against a protected group. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012). Here, this exception does not apply, because Plaintiff has not alleged, and has not adduced any evidence, that Defendants discriminated against any other employees on the basis of disability. *See Majors v. General Elec. Co.*, 714 F.3d 527, 536 (7th Cir. 2013). Nor has Plaintiff presented sufficient arguments for the application of this exception.

Another exception to the *Morgan* doctrine is when a plaintiff maintains a hostile-work-environment claim. *Morgan*, 536 U.S. at 115–118. Here, Plaintiff has not articulated a hostile-work-environment claim. Nor has Plaintiff presented sufficient arguments for the application of this exception.

Therefore, discrete discriminatory acts alleged by Plaintiff in this case which Plaintiff did not raise with the EEOC within 180 days of their occurrence are time barred.

Regarding the second deadline Plaintiff must meet, once he received a notice of right to sue, he had only 90 days to file a lawsuit. 42 U.S.C. § 2000e-5(f)(1), incorporated by 42 U.S.C. § 12117(a). The triggering event is receipt of the notice. *See Thread-gill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir. 2001). The 90-day limitation is not a jurisdictional prerequisite, but a

condition precedent, like a statute of limitations. *Perkins v. Silverstein*, 939 F.2d 463, 469–70

(7th Cir. 1991).

      In sum, claims arising from occurrences that happened more than 180 days before a

plaintiff filed the relevant EEOC charge, as well as claims filed in federal court more than 90

days after receipt of the relevant notice of right to sue, are lost for lack of timeliness.


(b)     *Application of the 180-day deadline*

      Here, the record does not reflect any filing by Plaintiff with any state or local agency with

authority to grant or seek relief from employment discrimination regarding his claims.

      Plaintiff filed his first EEOC charge against the School on September 15, 2011.

Therefore, any ADA claim Plaintiff purports to bring arising from discrimination or retaliation

that happened before March 19, 2011 (180 days before Plaintiff filed his first EEOC charge) is

time barred for failure to exhaust administrative remedies, and the Court dismisses all such

claims. Indeed, the 2011 EEOC charge on its face only covers the period from May 4, 2011,

through June 3, 2011.

      Turning to the 2013 EEOC charge, Plaintiff filed this charge on August 9, 2013.

Therefore, any ADA claim Plaintiff purports to bring arising from discrimination or retaliation

that happened after the filing of the first EEOC charge on September 15, 2011, but before

February 10, 2013 (180 days before Plaintiff filed his second EEOC charge) would be time

barred for failure to exhaust administrative remedies. An exception, however, applies to conduct

that occurred after the filing of an EEOC charge, and in retaliation for that charge. *See McKenzie*

*v. Ill. Dept. of Transp.*, 92 F.3d 473, 482 (7th Cir. 1996). In the light most favorable to the

Plaintiff, ADA claims arising from the following allegations could be construed as timely under this exception, although they would otherwise be time barred:

(i)     the confiscation of Plaintiff's keys at the beginning of the 2012-13 school year (Compl., DE 1, ¶ 78);

(ii)    the incident in May 2012 involving two deaf or hard-of-hearing students left unattended in Plaintiff's classroom and the subsequent meetings about this incident (Compl., DE 1, ¶¶ 79, 82, 88);

(iii)   Plaintiff's absence from school on August 24, 2012 (Compl., DE 1, ¶¶ 91); and

(iv)    the altering of reports, and related hearings and reprimands in September 2012 (*Id.* ¶¶ 96–98).

In addition to ADA claims arising from the four allegations listed above, ADA claims arising from the following allegations are also timely, because (in the light most favorable to Plaintiff) they occurred within one of the 180-day periods before Plaintiff filed an EEOC charge:

(v)     "severe reprisal actions" between March 19, 2011, and September 15, 2011 (Compl., DE 1, ¶ 53);

(vi)    the denials of competent sign language translators to the extent these denials occurred between March 19, 2011, and September 15, 2011 (*Id.* ¶¶ 62–63);

(vii)   the note from Defendant Fraire to Plaintiff dated May 5, 2011 (*Id.* ¶¶ 65– 66);

(viii)  the termination of Plaintiff in 2011 (*Id.* ¶¶ 67–68);

(ix)    the harassment and reprimands during the 2012-13 school year (*Id.* ¶ 78);

(x)     the shredding of letters Plaintiff intended to give to Defendant Boarden and the manipulation of Plaintiff's attendance records, to the extent this happened within one of the two 180-day periods, or was in retaliation for the first EEOC charge (*Id.* ¶ 95);

(xi)    the termination of Plaintiff in 2013 (*Id.* ¶¶ 123 [sic], 110–24, 151, 170, 173, 175);

20

(xii)   the retaliation against Plaintiff for reporting regarding the lack of visible fire alarms, to the extent this retaliation occurred within one of the two 180-day periods (*Id.* ¶ 153);

(xiii)  the denial of the request to be assigned to a classroom in the newer annex of the Lew Wallace building which had flashing fire alarms (*Id.* ¶ 168);

(xiv)   any retaliation, including harassment and denials of reasonable accommodations, that occurred within one of the two 180-day periods (*Id.* ¶ 163);

(xv)    the incident during the 2012-13 school year when administrators left Plaintiff inside a school building during a fire drill, if this occurred after February 10, 2013 (*Id.* ¶ 169);

(xvi)   the false accusations of improprieties, including insubordination and neglect of duty, to the extent this occurred within one of the two 180-day periods, or was in retaliation for the first EEOC charge (*Id.* ¶ 170); and

(xvii)  all other acts or omissions that occurred within either of the two 180-day periods.

ADA claims arising from these allegations satisfy the 180-day timeliness requirement.


(c)    *Application of the 90-day deadline*

In addition to filing an EEOC charge within 180 days of the actionable conduct, Plaintiff must also file a lawsuit within 90 days of receipt of the notice of right to sue. Here, Plaintiff satisfied this requirement. The Court faces two issues regarding the 90-day requirement, and resolves both of them in favor of Plaintiff.

The first issue arises out of the fact that the DOJ sent the right-to-sue notice regarding the 2011 charge to Plaintiff twice: on December 16, 2013, and January 14, 2014. The date of receipt controls. Plaintiff did not receive the first iteration of this right-to-sue notice because he was out of the country when it arrived. After he returned to the country and inquired regarding U.S. postal notices, the DOJ resent the notice of right to sue regarding the 2011 charge to Plaintiff on January 14, 2014. This version of the letter noted that the new applicable date was the date of the

resent letter, and noted that Plaintiff had 90 days from receipt of the resent letter to file suit.

Plaintiff received this resent letter on January 16, 2014. (Decl. Gillo, DE 174, ¶ 29.) Plaintiff

filed this lawsuit on April 1, 2014, which is within 90 days of his receipt of the right-to-sue

notice regarding the 2011 EEOC charge.

The second issue arises out of the fact that Plaintiff did not receive the right-to-sue notice

regarding the 2013 EEOC charge until May 5, 2014, after he had filed this lawsuit. (*Id.* ¶ 30.)

But Plaintiff filed this right-to-sue notice with the Court on August 1, 2014, which is within 90

days of his receipt of it. (Dismissal and Notice Rights, DE 60 at 7; Decl. Gillo, DE 174, ¶ 30.)

And the Court deemed that notice to have been incorporated into the complaint. (Order, DE 207.)

Therefore, Plaintiff's ADA claims which survive the 180-day requirement also

survive the 90-day requirement. But Plaintiff still has more hurdles to clear.


**(5)**      ***Dismissal of all claims against all Defendants regarding the first termination as moot***

The School argues in support of its motion for summary judgment that claims involving

the first termination, effective at the end of the 2010-11 school year, are moot because the School

recalled Plaintiff to a teaching position for the 2011-12 school year. "A case is moot when the

issues presented are no longer live or the parties lack a legally cognizable interest in the

outcome." *Olson v. Brown*, 594 F.3d 577, 580 (7th Cir. 2010) (quoting *United States Parole

Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (quotation marks omitted)).

Here, the parties do not dispute that the School recalled Plaintiff to a teaching position for

the 2011-12 school year. Plaintiff did not respond to the School's mootness challenge, and

therefore waived any arguments on this issue, and abandoned this claim.

22

Accordingly, the Court dismisses all claims against all Defendants—under the ADA and otherwise—regarding the first termination, which was effective at the end of the 2010-11 school year.


**(6)**   ***Evaluation of merits of remaining ADA claims against the School***

The Court turns to an evaluation of the merits of the remaining ADA claims, which survive to this point only against the School.

Throughout his complaint, Plaintiff commingles various theories of recovery under the ADA: disparate treatment, failure to accommodate, and retaliation. Plaintiff's summary judgment briefing does little to clarify.

"It is important for plaintiffs to be clear about whether they are pressing disparate treatment or failure-to-accommodate claims (or both) because the two are analyzed differently." *Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1125 (7th Cir. 2006).


(a)   *ADA disparate-treatment claims against the School*

A plaintiff may show he suffered disparate treatment by claiming his employer treated him differently because of his disability. *See Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1021–22 (7th Cir. 1997). A plaintiff may pursue an ADA disparate-treatment claim through the direct method or the indirect method borrowed from the *McDonnell Douglas* burden-shifting approach. *See Timmons*, 469 F.3d at 1125.

To prevail on a disparate treatment claim under the direct method, a plaintiff must prove that: (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of the job with or without accommodation; and (3) he has suffered a

materially adverse employment action because of his disability. *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 683 (7th Cir. 2014).

Under the indirect method, a plaintiff may use the burden-shifting approach drawn from *McDonnell Douglas*. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 814 (7th Cir. 2015); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). A plaintiff must first make out a prima facie case of disparate treatment by showing: (1) he was disabled under the ADA; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered a materially adverse employment action; and (4) similarly situated employees without a disability were treated more favorably. *Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601–02 (7th Cir. 2011).

Then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Timmons*, 469 F.3d at 1226. If the defendant articulates such a reason, then the burden shifts back to the plaintiff to show that the defendant's stated reason is pretext for discrimination. *Dickerson*, 657 F.3d at 601–02.

To show pretext, it is not enough for the plaintiff to show that the defendant's articulated reason was a mistake, or was misguided, or was stupid. Rather, Plaintiff must show that defendant's articulated reason is essentially a lie. *See Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008).

At the summary judgment stage, the nonmoving party, here the Plaintiff, has lesser burdens during the *McDonnell Douglas* burden-shifting that he would have at trial. Plaintiff must only produce "evidence from which a rational factfinder could infer that the [defendant] lied" about its articulated reasons for the adverse employment actions. *Anderson v. Baxter Healthcare*

*Corp.*, 13 F.3d 1120 at 1124 (7th Cir. 1994) (quoting *Shager v. Upjohn Co.*, 913 F.2d 398, 401

(7th Cir. 1990) (quotation marks omitted)).

Here, Plaintiff complains of a litany of events. But even in the light most favorable to

him, most of these events cannot support a claim for disparate treatment under the direct or

indirect method.

For example, Plaintiff alleges that during the 2012-13 school year, he was harassed and

targeted with reprimands involving letters sent to the superintendent asking that he be suspended

without pay due to manufactured allegations. (Compl., DE 1, ¶ 78.) Plaintiff provides no further

details regarding the vague allegation of harassment. Accordingly, the Court dismisses this

claim. *See Witte v. Wis. Dep't of Corr.*, 434 F.3d 1031, 1038 (7th Cir. 2006) (a party forfeits any

arguments it fails to raise in a brief opposing summary judgment); *see also Palmer*, 327 F.3d at

597–98 (a claim is deemed abandoned when plaintiff fails to delineate it in his brief in opposition

to summary judgment).

Regarding the reprimands, Plaintiff must prove they led to a materially adverse

employment action, regardless of whether he proceeds under the direct or indirect method. A

materially adverse employment action in this context is an action that would dissuade a

reasonable person from engaging in a protected activity. *See Burlington N. & Santa Fe Ry. Co. v.

White*, 548 U.S. 53, 68 (2008). A materially adverse employment action is a "materially adverse

change in the terms and conditions of employment [that is] more disruptive than a mere

inconvenience or an alteration of job responsibilities." *Cerros v. Steel Techs., Inc.*, 288 F.3d

1040, 1044 (7th Cir. 2002) (quoting *Stockett v. Muncie Ind. Transit Sys.*, 221 F.3d 997, 1001 (7th

Cir. 2000) (quotation marks omitted)). "Minor or trivial actions that make an employee unhappy

are not sufficient to qualify as retaliation under the ADA." *Silk*, 194 F.3d at 800.

Reprimands, alone, are not materially adverse employment actions. *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009). Plaintiff has only alleged that these reprimands involved letters requesting his suspension without pay, and that these letters were put in his personnel file "in preparation to expel him." (Compl, DE 1, ¶78.) But Plaintiff has not alleged that Defendant School suspended him without pay due to these reprimands or letters. Nor has Plaintiff alleged that these reprimands or letters actually served as a basis for his termination in 2013. Accordingly, Plaintiff has failed to show an adverse employment action, so the Court dismisses all ADA claims arising from these allegations.

Plaintiff also alleges the head secretary and attendance time-keeper at Lew Wallace shredded letters he gave her to give to Defendant Boarden and manipulated Plaintiff's attendance records to deplete his accumulated sick leave balance, which prevented him from using the accumulated sick leave hours to boost his service years for pension purposes. (Compl., DE 1, ¶ 95.) It is unclear whether Plaintiff purports to bring ADA claims arising from these allegations, and it is unclear when these actions occurred. In the light most favorable to Plaintiff, the complaint could be interpreted as pursuing ADA claims arising from these actions, which might have occurred within an actionable time frame. But under either a disparate treatment or retaliation theory, and under either the direct or indirect method, Plaintiff must prove that these actions constituted materially adverse employment actions.

Regarding the shredded letters, Plaintiff has failed to show any reason why the shredding was a materially adverse employment action. He has offered no argument or proof regarding the contents of the letters, or why their receipt by Defendant Boarden would have made any difference. Therefore, the Court dismisses all ADA claims arising from this allegation.

Regarding the manipulation of attendance records, Plaintiff has shown that this was potentially an adverse employment action by alleging that this resulted in a depletion of his sick leave balance, and "blocked him from using the accumulated sick leave hours to boost his service years for pension." (Compl., DE 1, ¶95.) Defendants did not directly attack this issue in their summary judgment briefs.[2] Defendants failed to demonstrate that a reasonable fact-finder could not find an ADA violation in the manipulation of attendance records. Viewing the facts in the light most favorable to the Plaintiff, and resolving doubts in his favor, the Court cannot say as a matter of law that his ADA claim regarding the manipulation of attendance records must fail. Therefore, the Court denies Defendant School's motion for summary judgment on this issue, and allows timely ADA claims against Defendant School arising from the manipulation of attendance records to proceed, under a disparate-treatment theory or retaliation theory, or both.

Plaintiff also claims school administrators in the Lew Wallace building deliberately left his class inside the building during a fire drill during the 2012-13 school year, and Defendant Greene returned to the building to bring the class out "for everyone to stare at and ridicule to harass and embarrass Gillo." (Compl., DE 1, ¶ 169.) Even assuming this claim is timely, Plaintiff has failed to show that this claim can proceed. Plaintiff has failed to show that this claim involves a materially adverse employment action. Therefore, the Court dismisses any ADA claim arising from this incident.

---

[2] The Court notes Defendant School raised a general argument that Plaintiff has a litany of complaints against employees of the School who are not decision-makers and who have no role in whether there will be a reduction in force. (School Defs.' Reply, DE 200 at 9.) But the School did not raise this argument in its initial summary judgment brief, and Plaintiff did not have an opportunity to respond to this argument.

Plaintiff claims employees of the School falsely accused him of improprieties, including insubordination and neglect of duties. (Compl., DE 1, ¶¶ 63, 170.) The problem for Plaintiff here is that even written reprimands, without any changes in the terms or conditions of employment, are not materially adverse employment actions. *Lloyd*, 552 F.3d at 602. The School claims the termination was due to a reduction in force, not due to any improprieties or disciplinary actions or reprimands. Plaintiff claims the termination was due to disparate treatment and retaliation. Neither party claims Plaintiff's purported improprieties caused his termination. And Plaintiff does not allege that the false accusations led to any other adverse employment action. Accordingly, the Court dismisses any ADA claims arising from the false accusations of improprieties. *See Witte*, 434 F.3d at 1038.

Plaintiff's most significant allegation is that the School terminated him in 2013 "in prejudice of his disability and wanton vengeance for petitioning for support to secure reasonable accommodation for the disability." (Compl., DE 1, ¶ 151.) Thus Plaintiff appears to pursue ADA theories of disparate treatment and retaliation regarding the 2013 discharge. Plaintiff does not state whether he proceeds under the direct or indirect method.

Under the direct method, the parties do not contest that Plaintiff satisfies the first two elements of a prima facie case for disparate treatment. And regarding the third element, the 2013 termination is a materially adverse employment action. *See Kersting v. Wal-Mart Stores*, 250 F.3d 1109, 1115 (7th Cir. 2001). The question is whether the School implemented this adverse employment action because of Plaintiff's disability. The Court prescinds from resolving the issue of whether Plaintiff has shown sufficient evidence of discriminatory animus to resist summary judgment via the direct method, because regardless of whether there is sufficient evidence for the

28

direct method, the Court concludes that Plaintiff's claim survives summary judgment under the indirect method.

Under the indirect method, the parties do not contest the first three elements of the prima facie case for disparate treatment. Regarding the fourth element, the Court finds that there are genuine issues of material fact regarding whether the School treated similarly situated, non-disabled employees more favorably. The School claims that in 2013 it implemented a reduction in force. (School Defs.' Mem. Supp. Mot. Summ. J., DE 166 at 3.) But the School does not claim that any of these other teachers taught deaf or hard-of-hearing students.

At this stage, the Court must construe the facts in the light most favorable to Plaintiff, and resolve doubts in his favor. Therefore, the Court concludes Plaintiff has stated a prima facie case sufficient to survive summary judgment.

The burden therefore shifts to the School to show a legitimate, non-discriminatory reason for the 2013 termination. The School has articulated such reasons: decline in student population, financial problems, school closures, and a necessary reduction in force. (Defs.' Mem. Supp. Mot. Summ. J., DE 166 at 3, 15.)

The burden then shifts back to Plaintiff to show that the articulated reasons are pretextual. Plaintiff has made such a showing sufficient to resist summary judgment. Plaintiff claims that the population of deaf and hard-of-hearing students did not decline, even if the population of general education students did decline. Plaintiff claims that the financial problems faced by the School did not require his termination because his position was federally funded. The record reflects a willingness on the part of Plaintiff to move to different school buildings, and even a desire to do so in some instances. For these reasons, and his claim of seniority, Plaintiff claims he should not have been subject to a reduction in force, which was a pretext for discrimination.

Moreover, the note from Defendant Fraire to Plaintiff on May 5, 2011, may serve as further evidence of pretext. The note says:

> Your request through Annie Headen, Gary Teacher Union Working Conditions, to reschedule meeting with me on May 2, 2011 is not necessary. The meeting is cancelled. The meeting was to advise you about elimination of your H.I. teacher position effective at the end of this school year on June 3, 2011, because neither of the administrators at Glen Park Academy nor Lew Wallace Hearing Impaired Programs want to be bothered with your various demands for accommodations of your deafness.

(Mem. from Fraire to Gillo, DE 60 at 139.) Although this note addresses the 2011 termination and the Court dismissed claims related to that termination due to mootness, and although this note addresses issues relating to accommodations, Plaintiff could reasonably argue, and a jury could reasonably find, that this note evinces a discriminatory animus on the part of the School, and shows that the reasons proffered by the School for discharging Plaintiff in 2013 were mere pretexts. Although the School claims this note was forged, that is a fact question unsuitable for resolution at this stage.

Therefore, the Court denies Defendant School's motion for summary judgment regarding Plaintiff's ADA claim through a disparate-treatment theory regarding the 2013 termination.

(b)    *ADA failure-to-accommodate claims against the School*

A plaintiff may show his employer violated the ADA by failing to provide a reasonable accommodation for his known disability. *See Sieberns*, 125 F.3d at 1022. Title I of the ADA requires that employers make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the

operation of the business of [the employer]." 41 U.S.C. § 12112(b)(5)(A). A reasonable

accommodation may include:

> Making existing facilities used by employees readily accessible to and usable by individuals with disability; and . . . job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).  To prevail on a failure-to-accommodate claim under the ADA, a plaintiff

must show:

(1)     he is a qualified individual with a disability;

(2)     the employer was aware of his disability; and

(3)     the employer failed to reasonably accommodate the disability.

*EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005).

An employer is not liable under the ADA merely because it failed to provide a disabled

employee with the specific accommodation he requested. The requested accommodation must

have been reasonable. *Id.*

The *McDonnell Douglas* burden-shifting approach does not apply to failure-to-

accommodate claims. *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001).

Here, Plaintiff alleges he was denied competent sign language interpreters on multiple

occasions. Such denials could conceivably support ADA claims for failure to accommodate. But

a failure to accommodate cannot also be considered a retaliation. Plaintiff cites no authority for

the proposition that an employer's failure to accommodate can also be considered a retaliation.

This Court agrees with the logic expressed by a sister district on this issue:

> If this court were to accept [the argument that failure to accommodate can also be retaliation], almost every failure to accommodate claim would be simultaneously a retaliation claim. The court finds that it was unlikely Congress' intent to provide plaintiffs redundant relief for the same conduct when it established the anti-retaliation provisions of the ADA.

*Pagliaroni v. Daimler Chrysler Corp.*, 2006 WL 2668157 at *9 (E.D. Wis. 2006). Since a failure-to-accommodate claim cannot also be a retaliation claim, Plaintiff does not receive the benefit of the retaliation exception to the timeliness requirements, so his claims arising from failure to provide competent interpreters are limited to the two 180-day windows.

Plaintiff alleges he was denied competent sign language interpreters on May 25 and 31, 2012. (Compl., DE 1, ¶¶ 82–88.) This failure-to-accommodate claim is time barred.

Elsewhere in his complaint, Plaintiff alleges he was denied competent sign language interpreters, but he does not provide definite dates. (Compl, DE 1, ¶¶ 1, 40, 62–63.) In the light most favorable to the Plaintiff, these denials might have occurred within one of the two 180-day windows. So the Court turns to an evaluation of the merits of an ADA claim for failure to accommodate arising from these denials.

Although the School points to several disciplinary issues, the parties do not dispute the first two elements of a failure-to-accommodate claim. Regarding the third element, the "ADA requires that employer and employee engage in an interactive process to determine a reasonable accommodation." *Sears*, 417 F.3d at 797 (quoting *Baert v. Euclid Beverage, Ltd.*, 149 F.3d 626, 633 (7th Cir. 1998) (quotation marks omitted)). If a disabled employee shows that his disability was not reasonably accommodated, "the employer will be liable only if it bears responsibility for the breakdown of the interactive process. *Sears*, 417 F.3d at 797. "It is the employer's prerogative to choose a reasonable accommodation; an employer is not required to provide the particular accommodation that an employee requests." *Jay v. Internet Wagner, Inc.*, 233 F.3d

1014, 1017 (7th Cir. 2000). But the employer is obligated to provide an accommodation that effectively accommodates the disabled employee's limitations. *See U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 400 (2002). "The duty of reasonable accommodation is satisfied when the employer does what is necessary to enable the disabled worker to work in reasonable comfort." *Vande Zande v. State of Wisc. Dep't of Admin.*, 44 F.3d 538, 546 (7th Cir. 1995). An employer is not liable under the ADA merely for failing to provide a specific accommodation requested by the employee. The accommodation requested must have been reasonable.

Indeed, the ADA explicitly recognizes that providing an interpreter is the sort of accommodation that might be appropriate. 42 U.S.C. § 12111(9). In its summary judgment briefs, the School does not sufficiently address the claim regarding interpreters. The School has failed to demonstrate that a reasonable fact-finder could not find an ADA violation in the failure to provide competent sign language interpreters. Viewing the facts in the light most favorable to the Plaintiff, and resolving doubts in his favor, the Court cannot say as a matter of law that his claim for failure to accommodate with competent interpreters fails. Therefore, the Court denies the School's motion for summary judgment on this issue and allows timely claims against the School for failure to accommodate arising from the failures to provide competent interpreters to proceed.

Plaintiff also claims he asked to be assigned to a classroom in the newer annex of the Lew Wallace building with flashing fire alarms, but his request was denied. (Compl., DE 1, ¶ 168.) Plaintiff does not say exactly when his request was denied. If this occurred outside the statutory time periods, then this claim is barred. In the light most favorable to Plaintiff, however, this might have occurred within one of the statutory time periods.

At this stage, viewing the facts in the light most favorable to the Plaintiff, the Court cannot conclude that such a request was *per se* unreasonable, as a matter of law. Accordingly, the Court denies summary judgment for the School regarding this claim.

(c)   *ADA retaliation claims against the School*

A plaintiff may also bring a claim for retaliation under the ADA's anti-retaliation provision:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a). Since the ADA's anti-retaliation provision uses language comparable to that of Title VII, 42 U.S.C. § 2000e-3(a), Title VII retaliation cases provide guidance for the assessment of ADA retaliation claims. *See Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009).

When an employee complains to his employer that he thinks the employer has engaged in employment discrimination, this communication is protected. *See Crawford v. Metro Gov't of Nashville*, 555 U.S. 271, 276 (2009). Requests for accommodations are also statutorily protected. *See Cassimy v. Bd. of Ed. of the Rockford Pub. Schs., Dist. # 205*, 461 F.3d 932, 938 (7th Cir. 2006).

A plaintiff may pursue an ADA retaliation claim through the direct method or the indirect method borrowed from the *McDonnell Douglas* burden-shifting approach. *Povey v. City of Jeffersonville, Ind.*, 697 F.3d 619, 624 (7th Cir. 2012).

To prevail on a retaliation claim under the direct method, a plaintiff must prove:

34

(1)     he engaged in a statutorily protected activity;

(2)     the defendant subjected him to a materially adverse employment action; and

(3)     a causal link between the protected activity and the adverse employment action.

*Id.*

To prevail on a retaliation claim under the indirect method, a plaintiff must make out a

prima facie case by showing:

(1)     he engaged in protected activity;

(2)     he was performing his job satisfactorily; and

(3)     he was singled out for a materially adverse employment action that similarly
        situated employees who did not engage in protected activity did not suffer.

*Dickerson*, 657 F.3d at 601–02.

Then the burden shifts to the defendant to articulate a legitimate nondiscriminatory

reason for the adverse employment action. *Timmons*, 469 F.3d at 1226. If the defendant

articulates such a reason, then the burden shifts back to the plaintiff to show that the defendant's

stated reason is pretext for discrimination. *Dickerson*, 657 F.3d at 601–02.

Here, again, Plaintiff complains of a litany of events. But even in the light most favorable

to him, most of these events cannot support a claim for retaliation under the direct or indirect

method.

Some of the events are not materially adverse employment actions. For example, Plaintiff

complains of the confiscation of keys at the beginning of the 2012-13 school year, the incident in

May 2012 involving two students left unattended, the incident involving Plaintiff's absence from

school on August 24, 2012, and the altering of student reports. As discussed above, the only way

ADA claims arising from these incidents survive the time-bar is if such claims are for retaliation

35

for filing the 2011 EEOC charge. Plaintiff does not say whether he proceeds under the direct or indirect method. But either way, he needs to prove he suffered a materially adverse employment action. *Povey*, 697 F.3d at 624; *Dickerson*, 657 F.3d at 601–02.

The Court finds that the confiscation of keys is not a materially adverse employment action. The threat of key confiscation would not prevent a reasonable person from filing an EEOC charge of disability discrimination. The confiscation of keys is not a materially adverse change in the terms or conditions of employment, but is rather a mere inconvenience. Accordingly, the Court dismisses all ADA claims arising from the confiscation of keys.

The Court also finds that the allegations involving the two unattended students in May 2012, Plaintiff's absence from school on August 24, 2012, and the altering of student reports are not materially adverse employment actions. Plaintiff has not alleged, much less shown, that any of these involved or caused a materially adverse change in the terms or conditions of employment. To the extent Plaintiff received reprimands related to these incidents, even that is insufficient, as discussed in section G(6)(a), above. Therefore, the Court dismisses all ADA claims arising from these allegations.

Plaintiff claims that during 2008 through 2011, he suffered "severe reprisal actions . . . including, been [sic] moved around strategically in a scheme to pressure him to leave his job and plotting to expel him." (Compl., DE 1, ¶ 53.) As stated above, the Court dismisses all such ADA retaliation claims that accrued before March 19, 2011, as untimely. Regarding ADA retaliation claims arising after March 19, 2011, Plaintiff does not allege Defendants moved him during 2011. To the contrary, the record indicates he was at Lew Wallace High School throughout 2011. (Decl. Gillo, DE 174, ¶ 6.) Nor does Plaintiff add any substance to the allegation that Defendants

plotted in 2011 to expel him. Therefore, the Court dismisses all ADA claims based on paragraph 53 of the complaint.

Regarding a claim arising from the termination of Plaintiff in 2013, under the retaliation theory, again Plaintiff may use either the direct or indirect methods. Again, the Court prescinds from resolving at this stage the issue of whether Plaintiff has shown retaliation through the direct method, because the Court concludes Plaintiff's claim survives summary judgment through the indirect method. For the same reasons stated above regarding the disparate-treatment theory, the Court concludes that Plaintiff's claim against the School regarding the 2013 termination through a retaliation theory also survives summary judgment. Therefore, the Court denies the School's motion for summary judgment regarding Plaintiff's ADA claim through a retaliation theory regarding the 2013 termination.

Finally, Plaintiff's complaint includes several paragraphs that could involve timely ADA claims, but are too vague and undeveloped to proceed. Plaintiff flatly alleges he suffered retaliation for reporting regarding the lack of visible fire alarms. (Compl., DE 1, ¶ 153.) Plaintiff flatly alleges he suffered retaliation, including harassment and denials of reasonable accommodations. (Compl., DE 1, ¶ 163.) To the extent Plaintiff develops theories of recovery elsewhere regarding these vague claims, these statements are superfluous. To the extent Plaintiff does not, he waived these claims for lack of development, and the Court dismisses them.

## H.      Count 3—First Amendment claim against all Defendants

Count 3 also attempts to bring a claim for violation of Plaintiff's rights under the First Amendment. Plaintiff claims Defendants retaliated against him because he reported a violation of safety regulations regarding visible fire alarms at the Jefferson school building following an

incident in 2007 when fire marshals found Plaintiff and his class left inside the building during a fire drill. (Compl., DE 1, ¶ 153.) Plaintiff claims he "consistently" asked to be moved to buildings with visible fire alarms. (*Id.* ¶ 155.) Plaintiff claims his "numerous petitions and requests" for visible fire alarms "constituted free speech and petitioning on matters of concerns to him and the public . . . ." (*Id.* ¶ 171.) Plaintiff claims Defendants suppressed and terminated him "in retaliation for exercising his rights to petition for redress of matter of concern to him and deaf and hard of hearing children . . . ." (*Id.* ¶ 173.)

The Union Defendants argue in support of their motion for summary judgment that they are not state actors, and that Plaintiff's speech—regarding the lack of visible fire alarms and regarding all his other statements relevant to his complaint—is not protected under the First Amendment because his speech was not on a matter of public concern, but was merely job-related. (Union Defs.' Mem. Supp. Mot. Summ. J., DE 165 at 16.) He directed his speech to administrators of his employer and not to the public. (*Id.* at 16.) In particular, the Union Defendants argue that the complaints about the lack of visible fire alarms were not statements on matters of public concern, and that even if they were, they were made in 2007 so any constitutional claims regarding them are barred by the two-year statute of limitations. (*Id.* at 16–17.)

In his response, Plaintiff fails to provide substantive rejoinders to the argument that his speech was not constitutionally protected because it was not on a matter of public concern, or to the argument that even if some of his speech would have been constitutionally protected such a claim is barred by the statute of limitations. Accordingly, Plaintiff has forfeited his First Amendment claims. *See Witte*, 434 F.3d at 1038. The Court dismisses all of Plaintiff's First Amendment claims against all Defendants, in Count 3 and elsewhere.

## I.      Count 4, against all Defendants

Count 4—titled "VIOLATION 42 U.S.C. § 1983: EQUAL PROTECTION CLAUSES {VISIBLE FLASHING FIRE SAFET [sic] VIOLATION, 24 C.F.R. § 100.203 AND 24 C.F.R. § 100.204(a)}"—contains a litany of allegations. The Court has already addressed many of the allegations repackaged in Count 4.

### (1)      *Equal protection claim*

Regarding Count 4's equal protection claim, the Union Defendants argue that all of Plaintiff's claims against them are either ADA claims or duty-of-fair-representation claims. By failing to provide a substantive, developed response to this argument, Plaintiff acquiesces. *See Johnson*, 733 F.3d at 729. The Court already dismissed all ADA claims against the Union Defendants. *See* Section G(2)(b), above.

The Union Defendants argue that the Court lacks jurisdiction over the duty-of-fair-representation claims because these fall under the exclusive jurisdiction of the Indiana Education Employment Relations Board. Again, by failing to provide a substantive, developed response to this argument, Plaintiff acquiesces. Therefore, the Court dismisses Count 4's equal protection claim against the Union Defendants. The Court notes the existence of alternative reasons to dismiss this claim against the Union Defendants, but need not comment further.

Regarding Count 4's equal protection claim against the School Defendants, the Court applies the two-year statute of limitations borrowed from Indiana's personal injury law. *Serino v. Hensley*, 735 F.3d 588, 590 (7th Cir. 2013). Therefore, the Court dismisses all equal protection

39

claims against the School Defendants that arose before April 1, 2012 (two years before the filing of the complaint on April 1, 2014).

The surviving equal protection claims (such as an equal protection claim arising from the 2013 termination) are subject to rational basis review, because the class of persons with disabilities is neither a suspect nor a quasi-suspect class. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985). That is, if the Court can find a rational basis for the School Defendants' actions or omissions, then Plaintiff's equal protection claims must fail.

The School has articulated rational bases for its behavior: decline in student population, financial problems, school closures, and a necessary reduction in force. (School Defs.' Mem. Supp. Mot. Summ. J., DE 166 at 3, 15.)

Plaintiff failed to develop adequate facts and argument for his Count 4 equal protection claim. Accordingly, the Court dismisses the Count 4 equal protection claim against all Defendants. *See Palmer*, 327 F.3d at 597–98.

**(2)     *Federal regulations***

Plaintiff also claims in Count 4 that Defendants denied him and the deaf and hard-of-hearing students their rights to be in a safe environment, in violation of 24 C.F.R. § 100.203 and 24 C.F.R. § 100.204(a). (Compl., DE 1, ¶ 187.) Defendant lacks standing to pursue a claim on behalf of his students, so the Court dismisses any such claim. As the regulations cited by Plaintiff apply to dwellings, and Plaintiff develops no arguments supporting their application to school buildings, the Court dismisses all claims arising from these regulations.

**(3)**     *Refusal to pay for events*

Plaintiff also claims in Count 4 that Defendants refused to pay for him to attend events although they paid for hearing teachers to attend. (Compl., DE 1, ¶ 193.) The Court dismisses all claims against the Union Defendants arising from these allegations, for the reasons already stated. It is not clear when these refusals occurred. To the extent Plaintiff's claims arising from these allegations are not time barred, they may proceed against the School, under the ADA only.

**(4)**     *Fourth Amendment claims*

Plaintiff claims in Count 4 that Defendants violated the Fourth Amendment when discharging him. (Compl., DE 1, ¶ 198.)

The Fourth Amendment protects citizens against unreasonable searches and seizures:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Plaintiff has failed to maintain a Fourth Amendment claim. The closest he comes is by claiming that in March 2008, administrators of the School took documents from him (Compl., DE 1, ¶ 47–51), and someone broke into the cabinets of his classroom and took further documents and other items from him (*Id.* ¶ 52). As this occurred in 2008, more than six years before Plaintiff filed his complaint, Plaintiff's Fourth Amendment claim is barred by the two-year Indiana personal injury statute of limitations applicable to actions under § 1983 where the injury occurred in Indiana. *Serino*, 735 F.3d at 590.

(5)      *Individual School Defendants*

Plaintiff brought § 1983 claims against the individual School Defendants in both their

personal (a.k.a. "individual") and official capacities. (Compl., DE 1, ¶¶ 15–22; Pl.'s Mem. Supp.

Mot. Opp. Mot. Dismiss, DE 73-1, ¶ 47; Order, DE 84 at 2.)

As the Court dismisses all claims which could raise personal or official-capacity liability,

the Court also dismisses all individual School Defendants, in all capacities. The Court notes the

existence of other reasons to dismiss these individuals, but need not elaborate.


**J.      Count 5—Violation of 42 U.S.C. § 1985(3): Conspiracy to interfere with civil rights, against all Defendants**

Section 1985(3) creates a cause of action against persons conspiring to deprive classes of

persons of their federally protected rights. *See Cohen v. Ill. Inst. of Tech.*, 524 F.2d 818, 827–29

(7th Cir. 1975). Like § 1983, § 1985(3) itself does not create any substantive rights. The

elements of a § 1985(3) claim are: (1) a conspiracy; (2) a purpose of depriving any person of

equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) injury to person

or property or a deprivation of a right or privilege of a citizen. *Greene v. Benden*, 281 F.3d 661,

665 (7th Cir. 2002).

The Supreme Court held that "racial, or perhaps otherwise class-based, invidiously

discriminatory animus" must serve as the basis of the conspirators' actions in order for a plaintiff

to maintain a § 1985(3) claim. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). The Seventh

Circuit held that disabled persons do not constitute a protected class for these purposes. *D'Amato*

*v. Wis. Gas Co.*, 760 F.2d 1474, 1486 (7th Cir. 1985).

42

Plaintiff alleges discrimination against him because of his disability, but animus due to disability is insufficient to state a claim under § 1985(3). Therefore, the Court dismisses Count 5 against all Defendants because disabled persons are not a protected class under § 1985(3). The Court notes the existence of further reasons to dismiss Count 5, but need not elaborate.

**K.       Count 6—Common law conspiracy, against all Defendants**

Plaintiff does not state whether he brings his common law conspiracy count under federal or Indiana state law. But in any event, there is no applicable federal common law or Indiana common law claim for conspiracy. *See Indianapolis Horse Patrol, Inc. v. Ward*, 217 N.E.2d 626, 628 (Ind. 1966).

Count 6 does not add anything of substance to the complaint. Accordingly, the Court dismisses Count 6 against all Defendants. The Court notes the existence of additional reasons to dismiss Count 6, but need not elaborate.

**L.       Count 7—Indiana state law defamation, against the Union Defendants**

Plaintiff titles this claim: "IC § 34-15-1 (DEFAMATORY LIBEL, TRADUCE AND CALUMNY)." (Compl., DE 1, Count 7.)

Plaintiff claims Indiana Code § 34-15-1 "is to the effect that it is unlawful to falsely assert that someone is incompetent, or lacks ability in one's trade, business or profession or office in order to commit libelous traduce or calumny against the person." (Compl., DE 1, ¶ 240.) But there is no such law as Indiana Code *section* 34-15-1. Rather, *chapter* 1 of article 15 of title 34 of the Indiana Code contains two sections. And neither of these sections are "to the effect of" Plaintiff's interpretation. Section 1 addresses the process of proving that defamatory

statements concerned the particular plaintiff. Ind. Code § 34-15-1-1. Section 2 allows the defendant to allege the truth of the matter charged as defamatory, and other mitigating circumstances. Ind. Code § 34-15-1-2. Nevertheless, the Court will address Count 7 as an Indiana state law defamation claim.

The Court already dismissed this claim against the School Defendants due to Plaintiff's failure to file the requisite Indiana Tort Claims Notice. (Order, DE 84 at 3.)

Regarding the Union Defendants, Plaintiff does not allege in Count 7 any actual statements made by any of the Union Defendants that could constitute defamation. Besides, as previously noted, Plaintiff acquiesced to the Union Defendants' arguments that all claims against it were either ADA claims or breach-of-duty-of-fair-representation claims, and this Court has no jurisdiction over the breach-of-duty-of-fair-representation claims.

Therefore, the Court dismisses Count 7 entirely.

**M.      Conclusion**

In sum, the Court DENIES the School Defendants' motion to strike (DE 199).

The Court GRANTS the Union Defendants' motion for summary judgment (DE 164) and dismisses all claims against Defendants Gary Teachers Union Local No. 4, Zimmerman, Craig, Gardner-Johnson, and Headen, with prejudice.

The Court GRANTS the School Defendants' motion for summary judgment (DE 163) in part and DENIES it in part. The Court dismisses all claims against Defendants Pruitt, Cook, Fidishin, Fraire, Boarden, Greene, and Wright, with prejudice.

Only the following claims survive the motions for summary judgment:

    (1)       ADA failure-to-accommodate claims regarding interpreters, against Defendant School only, if timely;

    (2)       ADA disparate-treatment and retaliation claims arising from the manipulation of attendance records, against Defendant School only, if timely;

    (3)       ADA disparate-treatment and retaliation claims regarding the 2013 termination, against Defendant School only;

    (4)       ADA failure-to-accommodate claim arising from the denial of requests to transfer to a classroom in the newer annex of the Lew Wallace building, against Defendant School only, if timely; and

    (5)       ADA claims regarding the refusals to pay for Plaintiff to attend events, against Defendant School only, if timely.

The Court dismisses all other claims, against all Defendants, with prejudice.

**SO ORDERED** on September 2, 2016.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE